Pate, Executor, v. Tait.

No. 7459.

PATE, EXECUTOR, v. TAIT.

CHANGE OF VENUE FROM JUDGE.—*Appointment of Attorney as Judge pro tempore.—Constitutional Law.*—The act of March 7th, 1877, Acts 1877, Reg. Sess., p. 28, authorizing the judge of a court, on a change of venue from him, to appoint an attorney as judge *pro tempore,* is constitutional.

CONTINUANCE.—*Practice.—Presumption.*—Upon an application for a continuance, made by a defendant, supported by affidavit, on the grounds that he was unable to attend the trial of the cause, on account of sickness, that he was an important witness in his own behalf in such suit, and that his presence was necessary to a proper defence thereof; the plaintiff thereupon admitted that the defendant would testify to the facts stated in his affidavit, and consented that it might be used as evidence upon the trial, whereupon the court refused a continuance.

*Held,* that the presumption is in favor of the action of the trial court, with reference thereto, and such action will not be reversed, unless affirmatively shown to have been injurious.

INSTRUCTION.—*Presumption.—Record.*—Where instructions are not in the record, the presumption is that they were such as to prevent any misapplication of the evidence by the jury.

EVIDENCE.—*Statute of Limitations.—Concealment of Cause of Action.*—As to sufficiency of evidence to support a verdict, and to warrant the jury in finding such a concealment as to take a case out of the statute of limitations, see opinion.

From the Switzerland Circuit Court.

*H. A. Downey, L. O. Schroder, S. Carter* and *W. R. Johnson,* for appellant.

*W. D. Ward* and *J. S. Jelly,* for appellee.

WOODS, J.—Upon an affidavit of the bias and prejudice of the presiding judge, a practicing attorney of the county and State, in good standing, was appointed to preside, and, over the objection and exception of the defendant, did preside, at the trial of the case in the circuit court.

It is insisted, on two grounds, that the attorney so appointed to act as judge had no right, power or jurisdiction to act in that capacity, first, because the law does not authorize such an appointment; and, second, because, if the

law can be construed to authorize the appointment, the law itself is unconstitutional.

The act of March 7th, 1877, Acts 1877, Reg. Sess., p. 28, was in force at the time of the appointment complained of, and, if constitutional, plainly justified the action of the court. The language of the act, so far as necessary to quote, is: "In all cases where another judge may be called, if it shall be difficult for any cause to procure the attendance of such judge, to prevent delay, the court may appoint any competent attorney of this State, in good standing, to act as judge, who, if he consent to serve, shall be qualified as other judges, * * * and he shall have power to act, subject to the conditions provided for judges called as is in this act provided." Sec. 2.

The questions raised by counsel, both as to the construction and the constitutionality of this act, have already been settled by this court in a case wherein the same points were made as now, and presumably the same arguments, as the counsel for the appellant in this case were also of counsel for the appellant in the case referred to, viz. : *The State* v. *Dufour*, 63 Ind. 567. See also *Starry* v. *Winning*, 7 Ind. 311.

The defendant made an application for a continuance, supported by his own affidavit, which was overruled, and this is claimed to have been error. The showing was that the defendant was sick and unable to be present ; that he was an important witness in his own behalf. After stating what his testimony would be, and the fact of his sickness and inability to attend the court, his residence in the county, and other formal matters, the affidavit is as follows : "And he further says that his presence at the trial of said cause is necessary to the proper defence thereof ; that it is necessary to his proper defence that he be personally present at said trial in order that he may advise and confer with his counsel during the progress of said trial, and that he

desires to be present at said trial, and would be present now but for his inability to be there on account of said sickness."

The plaintiff admitted that the defendant would testify to the facts stated in the affidavit, and consented that the same be used on the trial, whereupon the court overruled the application for a continuance.

If there was any error in this ruling, it was because of that portion of the affidavit given in full, which set forth the necessity of the defendant's personal presence, to confer with his counsel, etc. It is unquestionably an important privilege of a party to be present at the trial of his cause, which should not be denied on a proper application made, unless for weighty reasons. The presumptions, however, are in favor of the action of the court in reference to a question of this kind, as well as others, and such action will not be reversed, unless shown affirmatively to have been wrong.

There was nothing in the affidavit to show when, if ever, the defendant would, or expected to, be able to be in attendance. The nature of the sickness was not shown, nor the age and general condition of health of the defendant. For aught that appears, the court may have had reason to believe that the defendant would never be able to attend the trial. In fact, the defendant died thereafter, and the assignment of errors in this court is made in the name of his executor. If a new trial were granted on this ground, he could not attend it, and possibly the facts stated in his affidavit might not be admissible again.

The remaining grounds, on which it is claimed that a new trial should have been granted, are, that the court erred in permitting the introduction of certain testimony, and in refusing to submit to the jury the sixth interrogatory in the shape requested by the appellant, and that the verdict is contrary to law, and not sustained by sufficient evidence, and that the damages are excessive.

The complaint was filed on the 24th day of October, 1876, and was for money alleged to have been received in January, 1865, for the use of the plaintiff by the defendant, but, from said date to the bringing of the suit, held and converted by the defendant to his own use.

The defendant answered by a general denial and pleas of payment and the six years' statute of limitations. The plaintiff replied in general denial and to the plea of limitation, that the defendant had concealed from the plaintiff the fact of having received the money; that the defendant and the plaintiff had daily intercourse and business transactions with each other, and during all such times the defendant at no time conveyed to the plaintiff the fact that he had received such money, and he denied having ever received any such money to this plaintiff, "and the fact never came to plaintiff's knowledge until within the last year, immediately before the commencement of this suit." There was no demurrer to this reply.

The evidence shows, or tends to show, that a Mr. Hamilton, of Kentucky, gave to one Baker, of Boone County, Kentucky, the sum of $250 for use of the appellee, James Tait. Baker, before receiving the money, had informed the defendant, William T. Pate, that he could get that sum of money of Hamilton for the benefit of the appellee, whereupon the defendant had said to Baker, "Tait is angry with you because of the interest you are taking in the defence of Hamilton, and you had better give me (Pate) the money to give to him;" and accordingly, within a few days, Baker, having received the money of Hamilton, handed it to Pate for the use of Tait; but, instead of handing the money to Tait, the appellee, the defendant gave the money, or probably only $175 thereof, to John Tait, the brother of the appellee, who applied the same to his own use, treating it as applied on the price of a dwelling-house, which he had conveyed to the wife of the appellee. The transaction between the

defendant and John Tait "was understood to be· strictly
secret," and the appellee did not in fact learn of the money
having come into the hands of the defendant for his, the
plaintiff's, use, until within the year before the suit was
brought. The parties had constant or frequent business
dealings, the plaintiff working for the appellee, but in all
their transactions and frequent settlements, the defendant
gave the plaintiff no information of the money. It may be·
inferred from the evidence, that the son of the plaintiff had
been killed, and that a suit was prosecuted against Hamil-
ton, perhaps for the killing, and, for reasons connected with
or growing out of this trouble, Hamilton was persuaded
by Baker to contribute the money in question for the use·of
the plaintiff. But of these things there are only hints in
the evidence, and nothing in the briefs.

It is insisted by counsel for appellant that the plea· of the·
statute of limitations is clearly established, and that there
is no proof showing or affording ground for an inference of
concealment by the defendant of the cause of action. We
have come to a different conclusion. Under the circum-
stances partially revealed by the evidence as already stated,
it is evident that neither Hamilton nor Baker were· ever likely
to communicate with the appellee about the matter. The·
defendant requested that the money be placed in his hands
by Baker, and told Baker that the appellee was angry with
him, Baker, a fact whose natural tendency was to keep
Baker away from the appellee, and this fact, taken in con-
nection with the understanding formed between the de-
fendant and John Tait to keep secret their disposition of
the money, was enough to warrant a jury in finding such
concealment as to take the case out of the statute of limita-
tions ; at least its tendency that way is so strong as to for-
bid any interference with the verdict by this court.

Under the issues and in the light of the circumstances, it
was proper that the plaintiff should be allowed to show his

dealings with the defendant during the time between the receipt of the money by the defendant and the bringing of the suit. The facts so proven tended to show the plaintiff's ignorance of his cause of action, and perhaps to throw light on the defendant's conduct from the time when he requested Baker to hand the money to him. The instructions of the court are not in the record, and the presumption is that they were such as to prevent any misapplication of the evidence by the jury.

The damages assessed were $420, and we can not say that they are excessive.

The sixth interrogatory, as modified by the court, was in legal effect the same as when unmodified, and the modification, therefore, did no harm for which the judgment should be reversed.

We find no error in the record.

Judgment affirmed, with costs.